# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANSEN BEVERAGE COMPANY,<br><br>　　　　　　　　　　　Plaintiff,<br>　vs.<br><br>INNOVATION VENTURES, LLC dba LIVING ESSENTIALS, a Michigan corporation,<br><br>　　　　　　　　　　　Defendant. | CASE NO. 08-CV-1166 IEG (POR)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**(Doc. No. 7.)** |

　　　　Presently before the Court is plaintiff Hansen Beverage Company's motion for preliminary injunction enjoining the sale and advertisement of defendant's products. (Doc. No. 7.) For the following reasons, the Court DENIES the motion.

## BACKGROUND

Factual Background

　　　　Plaintiff Hansen Beverage Company brings this action for false advertising against defendant Innovation Ventures doing business as Living Essentials. Plaintiff produces the "Monster" energy drink and other energy beverages. Defendant produces the "5-Hour Energy" 2-ounce "energy shot." Defendant has sold the product for four years for total profits of over $150 million. Although plaintiff's "Monster" products come in a 16-ounce (or larger) can, plaintiff intends to release a small-size product to compete in the "energy shot" market. Plaintiff seeks a

preliminary injunction enjoining defendant from calling its product "5-Hour Energy" and making the claims that it give "hours of energy now" with "no crash later."

Procedural Background

Plaintiff filed suit on July 1, 2008. (Doc. No. 1.)  Plaintiff alleges three causes of action: (1) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) false advertising in violation of California Business and Professions Code Sections 17200 and 17500; and (3) trade libel in violation of California law.  (Id.)  On August 8, 2008, plaintiff filed the instant motion for preliminary injunction. (Doc. No. 7.)  On August 21, 2008, defendant filed ex parte motions for discovery and a continuance of the hearing date. (Doc. Nos. 11 & 12.)  The Court denied the motion to continue the hearing date on August 25, 2008.  (Doc. No. 15.)  Magistrate Judge Porter denied the ex parte motion for discovery on August 28, 2008.  (Doc. No. 20.)

On August 29, 2008, defendant filed an opposition to the motion for preliminary injunction, and on September 8, 2008, plaintiff filed a reply.  (Doc. Nos. 25 & 30.)  The Court heard oral argument on the motion on September 15, 2008 at 10:30 a.m.  Edward McIntyre of Solomon Ward appeared on behalf of plaintiff.  Mark Cantor of Brooks Cushman appeared on behalf of defendant.

## DISCUSSION

Legal Standard

A preliminary injunction is appropriate if the moving party establishes either (1) a combination of probable success on the merits and the possibility of irreparable injury; or (2) serious questions going to the merits of the case and the balance of hardships tips sharply in favor of the moving party.  Stuhlbarg Intern. Sales Co. v. John D. Brush and Co., 240 F.3d 832, 839-840 (9th Cir. 2001).  These are not two separate tests, but rather two points on a sliding scale in which the required showing of harm varies inversely with the required showing of meritoriousness. Clear Channel Outdoor Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir. 2003).  Courts have also traditionally considered the advancement of the public interest when granting a preliminary injunction.  Johnson v. Cal. State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995).  In any situation, the court must find there is some threat of an immediate irreparable

1  injury, even if that injury is not of great magnitude.  <u>Oakland Tribune, Inc. v. Chronicle Publ'g
2  Co., Inc.</u>, 762 F.2d 1374, 1376 (9th Cir. 1985).
3       The factual determinations made by the court when granting or denying preliminary
4  injunctive relief, and the legal conclusions drawn from them, are not final adjudications on the
5  merits; rather, the court "need only find probabilities that the necessary facts can be proved."
6  <u>Sierra On-Line, Inc. v. Phoenix Software</u>, 739 F.2d 1415, 1423 (9th Cir. 1984).  Finally, pursuant
7  to Rule 65, no preliminary injunction may issue without a security posted by the applicant in an
8  amount determined by the Court as sufficient to protect the interests of the enjoined party.  See
9  Fed. R. Civ. P. 65(c).
10 Analysis
11 I.     Likelihood of Success on the Merits
12     A.     Plaintiff's Arguments
13      Plaintiff argues it is likely to succeed on its claim for false advertising under the Lanham
14 Act.  Section 43(a) of the Lanham Act provides:

> Any person who, on or in connection with any goods or services . . . uses in commerce . . . any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

19 15 U.S.C. § 1125(a)(1).
20      "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that
21 the statement was literally false, either on its face or by necessary implication, or that the statement
22 was literally true but likely to mislead or confuse consumers."  <u>Southland Sod Farms v. Stover
23 Seed Co.</u>, 108 F.3d 1134, 1139 (9th Cir. 1997).  Plaintiff argues the claims made by defendant are
24 literally false on their face and by necessary implication.
25      Plaintiff argues the name "5-Hour Energy" and the claims made on the bottle and in
26 advertisements ("Hours of Energy Now" and "No Crash Later") are literally false.  Plaintiff bases
27 this argument on a declaration by an in-house expert, Dr. Thomas Davis.  Dr. Davis declares "this
28 product does not, and cannot, produce energy, a defined scientific term, for the period of time that

1  Living Essentials claims, in any measurable amount." (Davis Decl. ¶ 4.) Dr. Davis defines energy
2  as the ability to do work, a scientific meaning, not the "energized feeling" which a user may obtain
3  from substances such as caffeine. (Id. ¶¶ 7, 24.)[1]

4      Plaintiff also argues any "energized feeling" stemming from use of the product does not
5  last five hours. Plaintiff bases this argument on a statistical graph from defendant's website,
6  which shows that 57.7 percent of users taking 5-Hour Energy found it provided five or more hours
7  of energy. Plaintiff argues this demonstrates the product does not generally last five hours, but
8  only does so 57.7 percent of the time.

9      Finally, plaintiff also argues the "no crash later" claims made on the bottle and in
10 advertisements are not true because according to defendant's own study, 24% of users experienced
11 some sort of "crash," and one-quarter is not "none."

12     B.    Defendant's Arguments

13     In response, defendant argues its advertising claims are not "literally false." Defendant has
14 submitted a declaration by Dr. Gail Mahady.[2] Dr. Mahady offers the opinion that a product can
15 boost a user's "energy" in ways other than giving the user calories. According to Dr. Mahady, the
16 ingredients found in "5-Hour Energy," including caffeine, taurine, and vitamins, have been
17 scientificaly shown to increase vigor and vitality. The product therefore delivers a perception of

---

[1] Plaintiff supports its argument that "energy" as used on the bottles means physical energy by discussing the picture on the bottle (a person running on the top of a mountain) and the pictures contained in defendant's television and print advertisements of people completing physical activities. Plaintiff argues this shows "by necessary implication" that defendant means the product gives you the biomechanical energy to complete athletic endeavors.

[2] Plaintiff filed objections to the Mahady declaration, arguing she does not have personal knowledge. Plaintiff's objections are primarily focused on disputing the facts asserted by Dr. Mahady. The Court finds the relevant portions of the declaration are based on Dr. Mahady's review of the Blum study or other studies and thus based on her personal knowledge. The Court does not rely on Dr. Mahady's declaration for any other disputed facts.
    The Court also overrules defendant's objections to plaintiff's evidence based on lack of personal knowledge and relevance. The Court notes both parties improperly used evidentiary objections based on relevance and lack of personal knowledge as a mechanism for disagreeing with factual assertions.

1  "energy" without actually delivering caloric energy to the body.[3]  Other products on the market,
2  such as plaintiff's own Diet Red Energy product, are called "energy drinks" despite having no
3  sugar or almost no sugar.

4  Dr. Mahady also reviewed a clinical study regarding the "5-Hour Energy" product and
5  found that the product did actually give an average energy boost of about five hours.  The
6  statistical average energy boost experienced in the Blum study was 4.92 hours.  The bottle also
7  warns that "individual results may vary" as to the hours of energy actually experienced by an
8  individual.

9  Dr. Mahady also opines that most users do not experience a "crash" from using "5-hour
10 energy."  Dr. Mahady defines crash as an energy dip <u>below</u> the energy experienced by the user
11 prior to drinking an energy drink. (Mahady Decl. at ¶ 10.) According to Dr. Mahady, the "crash"
12 reported on the chart on defendant's website is a return to the previous energy baseline, not a dip
13 below.  (<u>Id.</u>)  Accordingly, it is Dr. Mahady's opinion that all of the contested claims are supported
14 by scientific research and they are not false.

15  C.  Analysis

16  The parties offer expert declarations providing contrary definitions of "energy."  Plaintiff's
17 view is that the word "energy" can only mean caloric energy.[4]  Defendant's view is that "energy"
18 may be understood more colloquially to convey an "energized feeling," such as that obtained from
19 caffeine.  The falsity of the "no crash later" and five hour durational claims are similarly disputed.
20 "In deciding a motion for a preliminary injunction, the district court is not bound to decide
21 doubtful and difficult questions of law or disputed questions of fact."  <u>Int'l Molders' and Allied</u>
22 <u>Workers' Local Union No. 164 v. Nelson</u>, 799 F.2d 547, 551 (9th Cir. 1986) (internal citations
23 omitted).  Accordingly, the Court declines to resolve these factual disputes on such a limited

---

[3] As Dr. Mahady noted, illegal drugs such as methamphetamine or cocaine also give users the perception of increased energy by suppressing the brain's receipt of fatigue signals, among other effects.

[4] Plaintiff argues the pictures used in defendant's advertisements imply the product provides caloric energy for completing physical endeavors.  This argument is not persuasive.  If a substance negates the user's perception of fatigue and gives the perception of increased energy, this could enable increased physical activity without providing increased biomechanical energy.  This factual issue is not appropriate for resolution on such a limited record.

1 record, and finds plaintiff has not demonstrated a likelihood of success on the merits.

2 III.   Irreparable Harm

3     A.   Presumption of Irreparable Harm

4 Plaintiff argues the Court should presume irreparable harm in this case because plaintiff has shown defendant's advertising claims are literally false.  First, the Court declines to apply such a presumption because plaintiff has not shown literal falsity.  Second, the out-of-Circuit decisions applying such a presumption are not binding on this Court.  See Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144 (2d Cir. 2007)[5]; Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 944 (3d Cir. 1993).  The Court declines to deviate from traditional principles of equity without binding, in-Circuit authority.  See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006) (holding courts should not apply blanket presumptions when evaluating the propriety of equitable relief); Reno Air Racing Assoc., Inc. v. McCord, 452 F.3d 1126, 1137-38 (9th Cir. 2006) (explaining "[t]he Supreme Court recently reiterated that district courts should apply 'traditional equitable principles' in deciding whether to grant permanent injunctive relief and the decision is 'an act of equitable discretion by the district court. . . .'") (citing eBay, 126 S. Ct. at 1839).

The unpublished decision of the Central District of California in Pom Wonderful LLC v. Purely Juice, Inc., 07-2633 CAS, 2008 U.S. Dist. LEXIS 55426 (C.D. Cal. July 17, 2008), does not support plaintiff's arguments.  In Pom Wonderful, the court found irreparable harm based on the facts determined in a seven-day bench trial.[6]  The court explained it found irreparable harm based on "substantial evidence that plaintiff has and will continue to suffer irreparable harm in the form of loss of consumer goodwill, lost current and prospective business relationships, and tarnished reputation as a result of [defendant]'s actions."  Id. at *41.  Plaintiff incorrectly states the

---

[5] In Time Warner, the Second Circuit held:
> the likelihood of irreparable harm may be presumed where the plaintiff demonstrates a likelihood of success in showing that the defendant's comparative advertisement is literally false and that given the nature of the market, it would be obvious to the viewing audience that the advertisement is targeted at the plaintiff, even though the plaintiff is not identified by name.

Id. at 148.

[6] Contrary to plaintiff's representation, the decision did not concern a preliminary injunction. Compare Reply at 7 with Pom Wonderful, 2008 U.S. Dist. LEXIS 55426 at *41.

decision "state[s] unequivocally that irreparable harm is presumed when a competitor's advertisement is literally false." (Reply at 7.) The Central District did not apply such a presumption in Pom Wonderful.[7] The Court finds such a presumption inappropriate in this case.

### B. Traditional Principles of Equity

Traditional equitable principles disfavor an injunction in the circumstances of this case. First, courts are especially hesitant to alter the status quo before a full trial on the merits. As the Ninth Circuit explained in Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804 (9th Cir. 1963):

> It is so well settled as to not require citation of authority that the usual function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits. The hearing is not to be transformed into a trial of the merits of the action upon affidavits, and it is not usually proper to grant the moving party the full relief to which he might be entitled if successful at the conclusion of a trial. This is particularly true where the relief afforded, rather than preserving the status quo, completely changes it.

Id. at 808-09; see also LGS Architects, Inc. v. Concordia Homes of Nev., 434 F.3d 1150, 1158 (9th Cir. 2006) ("[The requested relief] will not further the purpose of a preliminary injunction, which is merely to preserve the relative positions of the parties until a trial on the merits can be held."). Plaintiff's requested injunction would prevent sales of defendant's product under it current name and prevent defendant from claiming the product is an energy drink. If the injunction issued, defendant's business would essentially end. The balance of equities disfavors the entering of the injunction without further factual development.

Second, plaintiff's delay in bringing suit weighs against granting a preliminary injunction. The "5-Hour Energy" product has been sold for four years. Plaintiff's president, Rodney Sacks, represents he learned of the offending claims one month before filing suit. But the company's awareness of the energy shot market, of which 5-Hour Energy is a market leader, must have predated the lawsuit by at least several months. Mr. Sacks represented to investors in an August 8, 2008 conference call that the company was planning the launch of an energy shot product.

---

[7]The court did, after finding literal falsity, presume customers were deceived or misled. Pom Wonderful, 2008 U.S. Dist. LEXIS 55426 at **28-29. The Ninth Circuit upheld this presumption in Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 209 (9th Cir. 1989) (holding the jury may "presum[e] that the consumers are, in fact, being deceived" where a competitor intentionally deceives consumers by expending "substantial funds in an effort to deceive consumers and influence their purchasing decisions.").

(Hamler Declaration ISO Motion to Continue Hearing, Ex B. at 4.)  The company already had a name for the product and had "comp[l]eted the formulation and the design of the product and anticipate[d] launching [it] later this quarter."  (Id.)  Mr. Sacks also represented the company monitored the "energy shot" market, waiting for it to "mature . . . to a sufficiently high level to justify the costs and focus of launching products and manpower behind it."  (Id. at 11.)  In light of these representations and the popularity of 5-Hour Energy for a period of four years, the Court does not accept Mr. Sacks' representation that plaintiff learned of defendant's product shortly before filing this lawsuit.[8]  Delays in requesting an injunction, whether for months or years, tend to negate a claim of irreparable harm.  See Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc., 762 F.2d 1374 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."); Givemepower Corp. v. Pace Compumetrics, Inc., No. 07cv157 WQH, 2007 WL 951350 (S.D. Cal. Mar. 23, 2007) (holding delay of two months, in circumstances of case, negated showing of irreparable harm).

The Court therefore finds plaintiff has not shown it will be irreparably harmed if the Court does not enter the requested injunction, and finds that the balance of equities disfavors a change in the status quo before a full trial on the merits.

## CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motion for a preliminary injunction.

**IT IS SO ORDERED.**

**DATED: September 29, 2008**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

---

[8] If the representation were true, it would tend to negate a showing of irreparable harm because it indicates plaintiff did not believe the energy shot market had serious impact on its market until just recently.