1  NORMAN L. SMITH [SBN 106344]
   nsmith@swsslaw.com
2  EDWARD J. MCINTYRE [SBN 80402]
   emcintyre@swsslaw.com
3  MICHAEL M. VASSEGHI
   mvasseghi@swsslaw.com
4  SOLOMON WARD SEIDENWURM & SMITH, LLP
   401 B Street, Suite 1200
5  San Diego, California 92101
   Telephone: (619) 231-0303
6  Facsimile: (619) 231-4755

7  Attorneys for HANSEN BEVERAGE COMPANY

FILED
AUG 1 1 2009
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANSEN BEVERAGE COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>INNOVATION VENTURES, LLC dba LIVING ESSENTIALS, a Michigan corporation,<br><br>Defendant. | CASE NO. 08-CV-1166 IEG (POR)<br><br>[~~PROPOSED~~] FIRST AMENDED COMPLAINT FOR FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT, CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 AND 17500 AND TRADE LIBEL<br><br>AND<br><br>JURY TRIAL DEMAND |

## PREAMBLE

This case involves a seller of energy drinks who, instead of allowing its products to speak for themselves in the marketplace, resorted to false advertising and trade libel in order to try to boost its own position and diminish Hansen's. The Lanham Act and California law provide Hansen with remedies for the false advertising and trade libel that has harmed its commercial interests.

## PARTIES

**Plaintiffs.**

1. Hansen Beverage Company is a Delaware corporation, licensed to do business in California, with its principal place of business in Corona, California.

2. Since 1992, Hansen has developed, marketed, sold, and distributed non-alcoholic beverages such as sodas, fruit juices, energy and sports drinks, smoothies, lemonades, and iced teas.

**Defendant.**

3. Innovation Ventures, LLC dba Living Essentials is, Hansen is informed and believes, a Michigan corporation with its principal place of business in Novi, Michigan. Living Essentials conducts business in this district.

4. Living Essentials commercially advertises and markets in interstate commerce competing energy drinks, each of which it publicly claims and represents, *inter alia*, produces five hours of energy.

## JURISDICTION

5. Because this civil action arises under the Lanham Act, 15 U.S.C. §§ 1051, et seq., and specifically 15 U.S.C. § 1125(a)(1)(B), this Court has jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

6. This Court also has subject matter jurisdiction pursuant to the provisions of 28 U.S.C. § 1332(a)(1) in that it is a civil action between citizens of different states, namely, California and Delaware and Michigan, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Finally, this Court has subject matter jurisdiction over Hansen's California unfair competition and false advertising claims pursuant to 28 U.S.C. § 1338(b), in that these claims are joined with a substantial related claim under the Lanham Act and this Court also has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(a).

## VENUE

8. Venue in this district is proper pursuant to the provisions of 28 U.S.C. § 1391(b).

## MATERIAL ALLEGATIONS

### Hansen.

9. Hansen's energy drinks have been extremely successful and are sold throughout the United States by more than 100,000 retail stores, including convenience stores, gas stations, supermarkets, club stores, drug stores and warehouse stores.

10. In 1997 Hansen introduced Hansen's® Energy Drinks.

11. Then, in April 2002, Hansen released the first of its popular Monster Energy® drinks. The line of Monster Energy® drinks has since grown to include the Lo-Carb Monster, Monster Khaos, Monster Assault, Monster M-80, Monster Heavy Metal, and Monster Mixxd energy drinks, which also use the Monster and Monster Energy® trademarks and similar trade dresses.

12. In 2004, Hansen introduced Lost® Energy™ Drinks and Rumba™. In 2005, Hansen introduced Joker Mad Energy™ drinks, a low-carb version of Lost® under the Perfect 10™ brand name as well as a new Lost® Five-O™ energy drink.

13. In 2006 Hansen introduced Ace™ Energy drinks and Unbound Energy® drinks.

14. Hansen's energy drinks have achieved significant success in commerce throughout the United States and are favored energy drinks for millions of customers.

### Living Essentials.

15. Living Essentials' 5-HOUR ENERGY® drinks are competing energy-drink products that Living Essentials markets and sells in interstate commerce throughout the United States.

16. Living Essentials advertises its 5-HOUR ENERGY® drinks in commercial advertising across the United States.

17. Rather than engage in fair competition in the marketplace, however, and allow consumers to exercise their own choice, Living Essentials has resorted to false advertising and trade libel to attempt to promote its 5-HOUR ENERGY® drinks and falsely to discourage customers from using or purchasing Hansen's energy drinks.

**The False Advertising Claims.**

18. Indeed, the name, "5-HOUR ENERGY®," is, in and of itself, false and misleading precisely because it states, or at a minimum implies, that two ounces of a 5-HOUR ENERGY® drink produces a sustained level of "energy" for five hours. This is untruthful based on the drink's ingredients and generally accepted principles of biochemistry, pharmacology and physiology.

19. One 5-HOUR ENERGY® commercial states:

Why do energy drinks make you crash? One minute you're wired up. The next you feel worse than before. The answer is large amounts of sugar and caffeine. But with 5-Hour Energy you could sail through your day with no jitters or crash. It contains B Vitamins for energy and amino acids for focus, zero sugar and only 8 calories. Drink it in seconds and in minutes you're feeling alert and productive and that feeling lasts for hours. 5-Hour Energy. Hours of energy now. No crash later. Available at these fine stores.

20. Living Essentials' claim that "with 5-HOUR ENERGY® you could sail through your day with no jitters or crash" is, based on the drink's ingredients and generally accepted principles of biochemistry, pharmacology and physiology, a false and misleading statement of material fact about 5-HOUR ENERGY®.

21. Living Essentials' claim that 5-HOUR ENERGY® "contains B Vitamins for energy and amino acids for focus" is, based on the drink's ingredients and generally accepted principles of biochemistry, pharmacology and physiology, false and misleading.

22. Living Essentials' claim that with 5-HOUR ENERGY® one can "drink it in seconds and in minutes you're feeling alert and productive and that feeling lasts for hours" is, based on the drink's ingredients and generally accepted principles of biochemistry, pharmacology and physiology, false and misleading.

23. Living Essentials' claims in this as well as additional advertisements that 5HOUR ENERGY™ provides "Hours of energy now. No crash later" are, based on the drink's ingredients and generally accepted principles of biochemistry, pharmacology and physiology, false and misleading.

24. Another 5-HOUR ENERGY® commercial states:

> Why are energy drinks bad? 12 spoons of sugar, that's bad. 200 calories, bad. Guarana, tisk, tisk. Good for a short jittery burst, then a dehabilitating crash. So don't drink energy drinks, drink 5-Hour Energy. It's not a drink, more like a sip. Well with that sip you'll feel alert and focused for hours, without the crash or jitters. It has zero sugar, only 4 calories and no guarana. 5-Hour Energy. Hours of energy now. No crash later.

25. Living Essentials' claim in this as well as additional advertisements that "you'll feel alert and focused for hours without the crash or jitters" is, based on the drink's ingredients and generally accepted principles of biochemistry, pharmacology and physiology, false and misleading.

26. Living Essentials' claim in this as well as additional advertisements that 5-HOUR ENERGY® provides "Hours of energy now. No crash later" is, based on the drink's ingredients and generally accepted principles of biochemistry, pharmacology and physiology, false and misleading.

27. A recent 5-HOUR ENERGY® commercial directly attacks Hansen:

> Kid: When you're ready to tear it up, grab an energy drink. Whoo. [Holding up a can of Hansen Monster Energy® drink]
>
> Announcer: When you've got a lot to do and you can't afford a let down, grab a 5-Hour Energy.
>
> Kid: This is totally kickin.
>
> Announcer: 5-Hour Energy keeps you going for hours without a crash unlike that sugary kid stuff. [Looking at the can of Hansen Monster Energy® drink]
>
> Kid: Whoa, harsh.
>
> Announcer: Well, there's over 12 teaspoons of sugar per can – just look. [Referring to the can of Hansen Monster® Energy drink]
>
> Kid: Gross.
>
> Announcer: 5-Hour Energy does it all without the sugar. You'll go from groggy to

1     get it done.

2     Kid: You mean like, work?

3     Announcer: Yeah, you should try it some time.

4     Announcer: 5-Hour Energy – hours of energy now, no crash later.

5     28. This commercial is false and misleading because Monster Energy® does not contain the equivalent of over 12 teaspoons of sugar. Furthermore, Living Essentials only informs the listener in small fine print that the Monster Energy® beverage being discussed comprises of two servings, making the commercial misleading. The commercial also falsely implies that drinking Monster Energy® causes users to experience a crash.

10     29. Another recent commercial attacking Hansen provides:

11     Announcer: Excuse me, would you eat 12 teaspoons of sugar?

12     Store Patron: What? [Holding a can of Monster Energy®]

13     Announcer: That's what's in your energy drink.

14     Store Patron: Oh, nasty.

15     Announcer: Not only sugar but 200 calories per can.

16     Store Patron: Look, all I want is energy.

17     Announcer: Then try 5-Hour Energy. It has zero sugar and only 4 calories.

18     Store Patron: It's kinda small, isn't it?

19     Announcer: So, it takes seconds to drink and boom – you get the energy boost you want without the crash or jitters.

20     Store Patron: No crash, huh?

21     Announcer: Still want that energy drink?

22     Store Patron: No thanks. I'll take the 5-Hour Energy.

23     Announcer: 5-Hour Energy. Hours of energy now.

24     Store Patron: No crash later.

25     30. This commercial is false and misleading because Monster Energy® does not contain the equivalent of over 12 teaspoons of sugar or 200 calories. Furthermore, Living Essentials only informs the listener in small fine print that the Monster Energy® beverage

being discussed comprises of two servings, making the commercial misleading. The commercial also falsely implies that drinking Monster Energy® causes users to experience a crash.

31. And another advertisement claims:

> This is you after an energy drink. Unfortunately, so is this. Why do energy drinks make you crash? One minute you're wired up. The next you feel worse than before. The answer is large amounts of sugar and caffeine. That's why you should try a new liquid energy shot called 5 Hour Energy. With 5 Hour Energy, you can leave grogginess behind and sail through your day without feeling jittery, tense or, you know. That's because 5 Hour Energy contains a powerful blend of B Vitamins for energy and amino acids for focus, alertness and better mood. There is zero sugar, about as much caffeine as a cup of coffee and only 4 calories. The 2-ounce shot takes just seconds to drink and in minutes you're feeling bright, awake and productive and that feeling lasts for hours. So if your energy drink makes you crash, switch to 5 Hour Energy. Hours of energy now, no crash later. Find out if 5 Hour Energy is right for you. It's available at these fine stores, or for more information go to 5hourenergy.com.

32. Living Essentials' claims in this as well as additional advertisements that 5-HOUR *ENERGY*® provides "Hours of energy now. No crash later" are, based on the drink's ingredients and generally accepted principles of biochemistry, pharmacology and physiology, false and misleading

33. Living Essentials' claim in this as well as additional advertisements that "with 5-HOUR *ENERGY*® you can leave grogginess behind and still do your day without feeling jittery and tense or, you know" is, based on the drink's ingredients and generally accepted principles of biochemistry, pharmacology and physiology, false and misleading.

34. Living Essentials' claim in this as well as additional advertisements that "5-HOUR *ENERGY*® contains a powerful blend of B Vitamins for energy and amino acids for focus, alertness and better mood," is, based on the drink's ingredients and generally accepted principles of biochemistry, pharmacology and physiology, false and misleading.

35. In addition, 5-HOUR *ENERGY*® conspicuously makes the following claims on each drink's container:

- "Hours of energy now"
- "No crash later"
- "Feel it in minutes • Lasts for hours"

- "Sugar free"
- "0 net carbs"

36. 5-HOUR *ENERGY*® Decaf conspicuously makes the following claims on each drink's container:

- "Hours of energy now"
- "No crash later"
- "Feel it in minutes • Lasts for hours"
- "Sugar free"
- "Decaf"
- "Only 4 calories"

37. 5-HOUR *ENERGY*® EXTRA STRENGTH conspicuously claims on each drink's container:

- "Sugar free"
- "Only 4 calories"

38. Living Essentials' claims in the quoted advertisements and/or on the product containers that 5-HOUR *ENERGY*® products provide "hours of energy now," or "sail through your day with no jitters or crash," or "in minutes you're feeing alert and productive and that feeling lasts for hours 5-Hour Energy," or "Hours of energy now. No crash later," or "Feel it in minutes lasts for hours" are, based on 5-HOUR *ENERGY*®'s ingredients, at least as disclosed on the applicable product container labels, false and misleading based on generally accepted principles of biochemistry, pharmacology and physiology and cannot and do not produce the effects claimed.

39. Living Essentials' claims in advertisements that its 5-HOUR *ENERGY*® products make the drinker "feel alert and focused for hours, without the crash or jitters" are, based on the products' ingredients, at least as disclosed on the applicable product container labels, false and misleading, given generally accepted principles of biochemistry, pharmacology and physiology, and do not and cannot produce the effects claimed.

40. 5-HOUR *ENERGY*® Decaf's ingredients, at least as disclosed—"sugar free," "Decaf," "6 mg. of caffeine," "only 4 calories"—given generally accepted principles of biochemistry, pharmacology and physiology, do not and cannot provide "Hours of energy now," "Feel it in minutes • Lasts for hours," "No crash later," as Living Essentials claims.

<mark>
<mark>
<mark>

<mark>
<mark>

<mark>
<mark>

</mark>
</mark>
</mark>
</mark>
</mark>
</mark>
</mark>
</mark>

Those claims are further false and misleading based on the products' ingredients including, in particular, the limited amount of caffeine and sugar in the products, at least as disclosed on the applicable container labels.

41. 5-HOUR *ENERGY*® Extra Strength's claims, described in paragraphs 18-30 and 33 above, including its claim derived from the name of the product itself, are false and misleading based on the product's claims to be "sugar free" and "only 4 calories" and the product's other ingredients at least as disclosed on the applicable container labels, given generally accepted principles of biochemistry, pharmacology and physiology.

**The Trade Libel.**

42. Living Essentials' statements that energy drinks contain "12 spoons of sugar, that's bad. 200 calories, bad. Guarana, tisk, tisk." falsely disparages energy drinks in general that contain some or all the ingredients to which Living Essentials refers, because such statements falsely impute adverse characteristics to and consequences of such ingredients. Such statements constitute a trade libel of and/or against energy drinks in general, including Hansen's energy drinks which fall within the class of drinks known as energy drinks.

43. Living Essentials' commercial—both the audio message and the depiction of an individual placing 12 heaping spoons of sugar into a 16 oz. Monster Energy® drink can—falsely disparage Hansen's products by falsely imputing adverse characteristics to and consequences of such ingredients. Such statements constitute a trade libel of and/or against energy drinks in general, including Hansen's energy drinks which fall within the class of drinks known as energy drinks.

44. Living Essentials' statements that energy drinks are "good for short jittery bursts, then a dehabilitating crash" are false and misleading statements, and by clear reference and/or inference falsely, disparage energy drinks in general, including Hansen's energy drinks which fall within the class of drinks known as energy drinks.

45. Living Essentials' statement "why do energy drinks make you crash" is false and misleading and constitutes trade libel in that by clear reference and/or by inference it

1  falsely disparages energy drinks in general, including Hansen's energy drinks which fall
2  within the class of drinks known as energy drinks.

3      46.     Living Essentials' statements, "One minute you're wired up. The next you feel worse than before" are false and misleading and constitute trade libel in that, by clear reference and/or by inference they falsely disparage energy drinks in general, including Hansen's energy drinks which fall within a class of drinks known as energy drinks. Such statements suggest that energy drinks in general, including Hansen's energy drinks, contain large amounts of sugar and caffeine which produce results that 5-HOUR ENERGY® drinks do not despite the fact that 5-HOUR ENERGY® drinks contain even higher levels of caffeine than Hansen's energy drinks. Such claims about Hansen's energy drinks are in any event false and misleading.

    47.     Living Essentials' statement, "the answer is large amounts of sugar and caffeine" is false and misleading and constitutes trade libel in that it falsely disparages energy drinks in general, including Hansen's energy drinks which fall within the class of drinks known as energy drinks.

    48.     Living Essentials' statement that "with 5-HOUR ENERGY® you can leave grogginess behind and still do your day without feeling jittery and tense or, you know" is false and misleading and constitutes trade libel in that it falsely disparages energy drinks in general, including Hansen's energy drinks which fall under the claim of drinks known as energy drinks.

    49.     The statements quoted above are false and misleading statements of material fact about Living Essentials' own products and also, by clear inference, about Hansen's energy drinks, such that they are likely to influence the purchasing decisions of a substantial number of reasonable consumers and actually deceive or have the tendency to deceive a substantial segment of the reasonable consumer audience.

    50.     All such statements constitute false advertising that Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and also California's unfair competition law, Business & Professions Code §§ 17200 and 17500, prohibit.

51. Worse, the effect such advertising has, and will have, on reasonable consumers makes Living Essentials' false claims about itself and its false statements about Hansen energy drinks even more pernicious.

## FIRST CLAIM FOR RELIEF
## [FALSE ADVERTISING—VIOLATION OF 15 U.S.C. § 1125(a)]

52. Hansen incorporates by this reference paragraphs 1 through 49, above.

53. Hansen sells beverages in interstate commerce throughout the United States.

54. Living Essentials sells its 5-HOUR ENERGY® products in interstate commerce throughout the United States and it competes with Hansen's energy drinks.

55. Living Essentials engages in commercial advertising in interstate commerce across the United States.

56. Living Essentials' advertisements contain false and misleading statements of fact concerning its own product.

57. In addition, Living Essentials' advertisements contain false and misleading statements of fact that the reasonable consumer would readily impute, and/or is likely readily to impute, to energy drinks in general and to Hansen's energy drinks in particular.

58. Living Essentials' false and misleading commercial advertising in interstate commerce violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that: it contains false and misleading statements of fact in commercial advertising about its own products and about Hansen's products; those representations are material; they are likely to influence the purchasing decision of a substantial number of reasonable consumers; those misrepresentations actually deceive or, at a minimum, have the tendency to deceive a substantial segment of the reasonable consumer audience; and, Hansen has been injured, and in the future is likely to continue to be injured, as a result of the misrepresentations, both by the direct diversion of sales from Hansen to Living Essentials and by a lessening of the goodwill associated with Hansen's products.

59. As a direct and proximate result, Hansen has suffered injury and harm and will

continue to suffer such harm, including money damages in excess of $75,000, exclusive of interest and costs, the exact amount of which Hansen will prove at trial.

60. Hansen is informed and believes that Living Essentials' false and misleading advertising is willful.

61. Hansen has no adequate remedy at law with respect to Living Essentials' future false and misleading commercial advertising precisely because Hansen is informed and believes that Living Essentials will continue in its same course of conduct unless and until it has been restrained by an order of this Court.

## SECOND CLAIM FOR RELIEF
## [FALSE ADVERTISING—CALIFORNIA LAW]

62. Hansen incorporates by this reference paragraphs 1 through 59, above.

63. Living Essentials' conduct, as alleged above, violates the misbranding provisions of the Federal Food, Drug and Cosmetic Act, 21 USC §§ 343 and 350, which make the false or misleading labeling of, *inter alia*, dietary and vitamin supplements unlawful and illegal.

64. In addition, Living Essentials' conduct, as alleged above, violates § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), in that it constitutes an unfair method of competition in or affecting commerce and unfair and deceptive acts and practices in or affecting commerce.

65. Living Essentials' conduct, as alleged above, constitutes false advertising and unfair competition pursuant to the provisions of Business & Professions Code §§ 17200 and 17500.

66. As a direct and proximate result, Hansen has suffered injury and harm and will continue to suffer injury and harm both by the direct diversion of sales from Hansen to Living Essentials and by a lessening of the goodwill associated with Hansen's products.

67. Hansen has no adequate remedy at law with respect to Living Essentials' future false and misleading commercial advertising precisely because Hansen is informed and believes that Living Essentials will continue in its same course of conduct unless and until it

has been restrained by an order of this Court.

## THIRD CLAIM FOR RELIEF

### [TRADE LIBEL]

68. Hansen incorporates by this reference paragraphs 1 through 65, above.

69. By virtue of all of Living Essentials' false and misleading statements as set forth above, and by singling out Hansen's energy drinks by their well-known ingredients, Living Essentials' has engaged in the intentional disparagement of the quality of energy drinks in general and of Hansen's energy drinks in particular, resulting in the money damages that Hansen has suffered.

70. As a direct and proximate result of all of Living Essentials' false and misleading statements as set forth above and also as a direct and proximate result of Living Essentials' trade libel and intentional disparagement of the quality of energy drinks in general and of Hansen's energy drinks in particular, Hansen has suffered money damages in an amount not presently known, but in excess of $75,000, exclusive of interests and costs, and which will be proved at trial.

71. Living Essentials' conduct constitutes an intentional misrepresentation and false, defamatory statements, all with the intention of causing injury to Hansen and is oppressive, fraudulent and malicious conduct as defined in California Civil Code § 3294. Hansen should recover, in addition to its actual damages, exemplary and punitive damages according to proof.

WHEREFORE, Hansen Beverage Company prays for relief against Living Essentials as follows:

1. For preliminary and permanent injunctive relief against Living Essentials pursuant to 15 U.S.C. §§1116 and 1125(a) and Business & Professions Code § 17203;

2. For an award of money damages;

3. For the recovery of Living Essentials' illegal and unjust profits;

4. For three times Hansen's actual money damages;

5. For a finding that Living Essentials' conduct constitutes an exceptional case,

P:00467146.2:07565.158 -12- 08-CV-1166 IEG (POR)
FIRST AMENDED COMPLAINT

Exhibit 1
Page 13

1 such that Hansen is entitled to its attorneys fees in addition to its costs and expenses of suit;

2     6.    For disgorgement of Living Essentials' illegal and unjust profits;

3     7.    For punitive and exemplary damages; and,

5     8.    For such other and further relief as this Court deems just and proper.

DATED: July 8, 2009         SOLOMON WARD SEIDENWURM & SMITH, LLP

By:   /s/ Edward J. McIntyre
NORMAN L. SMITH
EDWARD J. MCINTYRE
ALISON L. PIVONKA
Attorneys for Hansen Beverage Company

## DEMAND FOR JURY

Hansen Beverage Company demands a jury trial of all claims triable by a jury.

DATED: July 8, 2009         SOLOMON WARD SEIDENWURM & SMITH, LLP

By:   /s/ Edward J. McIntyre
NORMAN L. SMITH
EDWARD J. MCINTYRE
ALISON L. PIVONKA
Attorneys for Hansen Beverage Company