1    Daniel T. Pascucci, Esq. (SBN 166780)
dpascucci@mintz.com
2    Nathan R. Hamler, Esq. (SBN 227765)
nhamler@mintz.com
3    MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC
3580 Carmel Mountain Road, Suite 300
4    San Diego, California 92130
Telephone: (858) 314-1500
5    Facsimile: (858) 314-1501

6    Mark A. Cantor (*Pro Hac Vice*)
mcantor@brookskushman.com
7    Marc Lorelli (*Pro Hac Vice*)
mlorelli@brookskushman.com
8    Thomas W. Cunningham (*Pro Hac Vice*)
tcunningham@brookskushman.com
9    1000 Town Center, Twenty-Second Floor
Southfield, MI 48075-1238
10    Telephone: (248) 358-4400
Facsimile: (248) 358-3351

11

12    Attorneys for Defendant
INNOVATION VENTURES, LLC dba
LIVING ESSENTIALS

13

14

## UNITED STATES DISTRICT COURT

15

## SOUTHERN DISTRICT OF CALIFORNIA

16

| | |
|---|---|
| 17    HANSEN BEVERAGE COMPANY, a Delaware corporation, | Case No. 08-CV-1166 IEG POR |
| 18          Plaintiff, | **AMENDED COUNTERCLAIMS** |
| 19    v. | |
| 20    INNOVATION VENTURES, LLC dba LIVING ESSENTIALS, a Michigan | |
| 21    limited liability company, | |
| 22          Defendant. | |
| 23 | |

24

25

26

27

28

# PARTIES

## Counter- Plaintiff

1.      Innovation Ventures, LLC ("Living Essentials") is a Michigan corporation with its principal place of business in Farmington Hills, Michigan.  Living Essentials conducts business in this district.

## Counter-Defendant

2.      Hansen Beverage Company ("Hansen") is a Delaware corporation, licensed to do business in California, with its principal place of business in Corona, California.

3.      Hansen advertises, markets and sells a number of products as "energy supplements" purported to provide energy to the consumer.

# JURISDICTION

4.      Because this civil action arises under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, and specifically 15 U.S.C. § 1125(a)(1)(B), this Court has jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

5.      This Court has subject matter jurisdiction pursuant to the provisions of 28 U.S.C. § 1332(a)(1) in that it is a civil action between citizens of different states, namely, California and Delaware and Michigan, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Finally, this Court has subject matter jurisdiction over Living Essentials' California unfair competition and false advertising claims pursuant to 28 U.S.C. § 1338(b), in that these claims are joined with a substantial related claim under the Lanham Act and this Court also has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(a).

# VENUE

7.      Venue in this district is proper pursuant to the provisions of 28 U.S.C. § 1391(b).

**MATERIAL ALLEGATIONS**

**Living Essentials**

8.      Living Essentials markets two-ounce liquid dietary supplements under the 5-HOUR ENERGY brand name that provide the user with energy.

9.      Living Essentials' 5-HOUR ENERGY products have achieved significant success across the United States and are the favored source of energy for millions of consumers.

**Hansen**

10.      Hansen markets a number of products it labels as "energy supplements" under the brands "HANSEN," "MONSTER" and "LOST."

11.      Upon information and belief, Hansen markets the following, among others, labeled as "energy supplements": MONSTER ENERGY, LO CARB MONSTER, MONSTER ASSAULT, MONSTER MIXXD, MONSTER KHAOS, MONSTER M-80, MONSTER HEAVY METAL, LOST ENERGY, LOST PERFECT 10, LOST FIVE-O, and LOST CADILLAC (collectively hereinafter referred to as  "HANSEN ENERGY BEVERAGES"), MONSTER HITMAN, MONSTER LOBO, MONSTER SNIPER (collectively referred to as MONSTER ENERGY SHOTS); JAVA MONSTER ORIGINALE, JAVA MONSTER LO BALL, JAVA MONSTER LOCA MOCA, JAVA MONSTER MEAN BEAN, JAVA MONSTER NUT-UP, JAVA MONSTER IRISH BLEND, JAVA MONSTER RUSSIAN, and JAVA MONSTER IRISH BLEND (collectively hereinafter referred to MONSTER ENERGY COFFEES), JAVA MONSTER CHAI HAI and HANSEN PRIMAL ENERGY TEAS (collectively hereinafter referred to HANSEN ENERGY TEAS) (All above are collectively hereinafter referred to as HANSEN ENERGY PRODUCTS.)

12.      HANSEN ENERGY PRODUCTS compete with Living Essentials' 5-HOUR ENERGY products in the marketplace throughout the United States.

13.      Rather than engage in fair competition in the marketplace, and allow consumers to

exercise their own choice, Hansen has resorted to false advertising to promote its energy drinks, causing Living Essentials to suffer substantial economic damages.

**Hansen's Energy Products**

14.     In 2002, Hansen introduced its MONSTER ENERGY product in a single size – a 16 ounce non-resealable can.   The market leader in energy drinks at that time was Red Bull in an 8.3 ounce can.

15.     Upon information and belief, the MONSTER name was chosen, in part, because the MONSTER ENERGY sixteen (16) ounce can was the first offering of that larger size in the "energy" marketplace.

16.     Hansen subsequently introduced the other HANSEN ENERGY PRODUCTS identified above.

**Hansen Markets Its Products to Young Children as a Means to**
**Get Intoxicated Either Alone or in Combination with Alcohol**

17.     A product labeled as a dietary supplement must not present a significant or unreasonable risk of illness or injury when used as directed or marketed or it is adulterated and unlawful to sell.  Cal. Health & Saf. Code §§ 110100(a), 109940, 110445, 110555, 110745.

18.     A dietary supplement promoted for use to achieve intoxication either alone or when mixed with alcohol presents a significant or unreasonable risk of illness or injury and therefore is adulterated and unlawful to sell.  Cal. Health & Saf. Code §§ 110100(a), 109940, 110445, 110555, 110745.   Likewise, a caffeinated dietary supplement promoted for use by children under twelve (12) years of age presents a significant or unreasonable risk of illness or injury and therefore is adulterated and unlawful to sell.  Cal. Health & Saf. Code §§ 110100(a), 109940, 110445, 110555, 110745.  Hansen misleads consumers through its marketing into believing that it is safe to mix its

caffeinated products with alcohol or for young children to consume it them.

19.     In its advertising and on its labels for its HANSEN ENERGY PRODUCTS, with the exception to MONSTER LOBO and MONSTER SNIPER, Hansen states that each product is an "energy supplement," which is a dietary supplement.  On its MONSTER LOBO and MONSTER SNIPER products, Hansen lists the products as dietary supplements.

20.     Hansen promotes its HANSEN ENERGY BEVERAGES and MONSTER ENERGY COFFEES to youth, among others, as aids in "partying" and for use to achieve intoxication either through excessive caffeine intake or through mixing the products with alcohol, thus rendering them adulterated dietary supplements.

21.     Hansen markets its HANSEN ENERGY BEVERAGES to youth aged at least as young as eight (8) years and up.  Its advertising and promotion are geared towards youth.

22.     Hansen has sponsored "athletes" as young as eight (8) years old and typically sponsors events, such as youth skateboarding, snowboarding, bicycle moto-cross (BMX) and motor-cross events, both in which children compete, and that are attended by children of all ages.

23.     Upon information and belief, Hansen also markets its HANSEN ENERGY PRODUCTS on college campuses across the country.

24.     Hansen actively encourages consumers, including youth, of its HANSEN ENERGY BEVERAGES and MONSTER ENERGY COFFEES to mix these products with alcoholic beverages.  Indeed, Hansen posts alcoholic drink recipes for its products on its website.

25.     Hansen entered into a distribution agreement with Anheuser Busch to market a number of HANSEN ENERGY BEVERAGES in bars and nightclubs.

26.     It is dangerous to mix energy drinks containing caffeine with alcohol because the combination may mask the effects of the alcohol, leading intoxicated individuals, particularly children, to drink more or to conclude that they are capable of dangerous activities such as driving while intoxicated.

27.     Hansen, including its CEO, knew or should have known that caffeine and alcohol

should not be mixed as it is dangerous and presents a significant or unreasonable risk of illness or injury.

28. It could be particularly dangerous to mix the HANSEN ENERGY BEVERAGES and MONSTER ENERGY COFFEES with alcohol because Hansen does not disclose the content of caffeine or guarana (an herb that contains caffeine) in any of these products. Hansen also fails to disclose a common reference amount in any of its caffeinated beverages (i.e. it includes no statement informing consumers that each can contains the caffeine equivalent of e.g. two cups of a premium coffee.") The consumer has no way to know how much caffeine is being consumed or mixed with any alcohol consumed.

29. Use of carbonated, caffeinated, and sugarized beverages in aid of youthful alcohol abuse is a well-known global phenomenon linked to significant injuries ranging from intoxication impairing judgment and motor skills to engaging in dangerous activities to death.

30. Despite the logical result of promoting its products as intoxicants to achieve a "Buzz" effect and for ingestion with alcohol, which can lead to dire consequences, Hansen does nothing to discourage the abuses, choosing instead to encourage intoxication, thereby misleading its consumers.

31. Hansen's promotion of its HANSEN ENERGY BEVERAGES and MONSTER ENERGY COFFEES for addition to alcohol is unlawful under Cal. Health & Saf. Code §§ 110100(a), 109940, 110445, 110555 and because the California Department of Health Services has not approved use of those products as food additives to alcohol.

32. The HANSEN ENERGY BEVERAGES and MONSTER ENERGY COFFEE products mislead consumers because they are represented to be dietary supplements, safe for their intended use, but are recommended as intoxicants, making them unsafe and adulterated. The products are not marketed as additions to the daily diet in support of recognized structures or functions of the body, like increased energy, but as substances that can produce a high or "buzz" effect, can be used in "partying," and can be mixed with alcohol. Those intoxicating uses are not

safe but present an unreasonable risk of illness or injury, particularly to the youthful consumers that Hansen targets, making the products adulterated dietary supplements under Cal. Health & Saf. Code §§ 110445, 110555, 109940 (unsafe food additives; adulteration). *See also* Cal. Health & Saf. Code § 110100(a) (adopting federal food labeling regulations); § 110100(a) (adopting federal food labeling regulations); § 110390 (misleading advertisements of any food); § 110398 (unlawful for person to advertise food that is adulterated or misbranded); § 110290 (misleading nature of food advertisement); §§ 110660 and 110710 (misbranding); § 110655 (misbranding resulting from noncompliance under the FDCA) ; and § 110745 (misbranding when intended for use as component of another food that would be adulterated or misbranded in final form).

33. Hansen's promotion of its MONSTER ENERGY BEVERAGES and MONSTER ENERGY COFFEES for use as intoxicants causes them to be misbranded under state law and is misleading under the Lanham Act. *See* Cal. Health & Saf. Code §§ 110505, 110655, 110660, 110710, 110745.

**Hansen Misleads Consumers on Calorie and Sugar Content**

34. In its advertising and on its HANSEN ENERGY BEVERAGES and HANSEN PRIMAL ENERGY TEAS, Hansen states in small print that each sixteen (16) ounce can contains two eight (8) ounce servings. On its MONSTER ENERGY COFFEES and MONSTER CHAI HAI, Hansen states that each sixteen (16) ounce can contains "about 2" servings. The labels on HANSEN ENERGY PRODUCTS provide "Supplemental Facts" rather than "Nutritional Facts" about the products. The data in the "Supplemental Facts" on each is based on an eight (8) ounce serving rather than a sixteen (16) ounce serving.

35. In its advertising and on its MONSTER ENERGY and LO CARB MONSTER sixteen (16) ounce cans, Hansen markets these products as single, sixteen (16) ounce servings by, among other ways, encouraging consumers to "GO BIG" and stating that a consumer can achieve "Twice the buzz of a regular energy drink." Thus, Hansen either promises consumers that they will

receive twice the buzz of a regular eight (8) ounce energy drink by consuming its sixteen (16) ounce can, or, assuming the opposite, Hansen asserts that a single eight (8) ounce serving of MONSTER ENERGY or LO CARB MONSTER is twice as effective as regular energy drinks.

36.    In its advertising and on its MONSTER ENERGY COFFEES, Hansen markets each product as a single, sixteen (16) ounce serving by, among other ways, stating that the product contains " half the caffeine of regular coffee," but delivers "Twice the Buzz."

37.    In its advertising and on its HANSEN PRIMAL ENERGY TEAS, Hansen markets each product as a single, sixteen (16) ounce serving by, among other ways,  recommending that a consumer "experience a can"… "to achieve the benefits of 100 mg of EGCG."  A consumer must drink the entire can "to achieve the benefits of 100 mg of EGCG."

38.    The 15-16 ounce HANSEN ENERGY BEVERAGES, MONSTER ENERGY COFFEES and HANSEN ENERGY TEAS are designed, intended, and customarily consumer in a single sitting.  The cans of these products are not resealable and there are no instructions on the label to explain any external means to store the product.  This is particularly important for those, including the HANSEN ENERGY BEVERAGES and HANSEN ENERGY TEAS, which are carbonated and lose carbonation, and their original taste, if not resealed, or consumed all in one sitting.

39.    The cans for the 15-16 ounce HANSEN ENERGY PRODUCTS have no demarcation to indicate when half of the contents of a can has been consumed, and because the cans are opaque, there is no way for a consumer to discern that half of a can, as opposed to more than half, has been ingested.

40.    The 15-16 ounce HANSEN ENERGY BEVERAGES, MONSTER ENERGY COFFEES and HANSEN ENERGY TEAS are all primarily intended to be consumed cold.  These products do not taste the same when consumed warm or at room temperature.

41.    On the FAQ section of its website, Hansen has stated: "It's definitely not soda but you can still down the whole 16-oz can," thus encouraging consumers to drink all sixteen (16)

ounces in one sitting, as a single serving.

42.     Hansen offers a number of its twenty-four (24) ounce HANSEN ENERGY BEVERAGES in re-sealable cans.  Its biggest seller – sixteen (16) ounce Monster Energy – is not sold in a re-sealable can.

43.     Because the HANSEN ENERGY BEVERAGES, MONSTER ENERGY COFFEES and HANSEN ENERGY TEAS are designed, promoted for, and customarily consumed in one sitting, the Supplement Facts panels for the products deceive consumers.  Each Supplement Facts panel lists each ingredient based on the fictive assumption that the serving size is one-half of a can.  Thus, because the non-resealable can technology invites consumption of the entire sixteen (16) oz. product at one time, and consumers are provided with nutritional information that is based on consumption of only eight (8) oz., consumers are misled.

44.     The misrepresentation also presents a significant or unreasonable risk of illness or injury at risk populations of diabetics and hyperglycemics along with those sensitive to caffeine.

45.     Because Hansen's deceptive serving size, calorie, carbohydrate, and sugar listings violate state labeling laws (Cal. Health & Saf. Code § 110290, 110505, 110655, 110660, 110670; 21 U.S.C. 343(a)), Hansen's actions violate the California Business & Professions Code §§ 17200 and 17500 and the Lanham Act.

**Hansen Misleads About Efficacy of Monster Energy Drink,**

**Lost Perfect 10, Lo Carb Monster and its MONSTER ENERGY COFFEES**

46.     The statement on MONSTER ENERGY "It's a wicked mega hit that delivers twice the buzz of a regular energy drink" is false and/or misleading based on the products' ingredients and generally accepted principles of biochemistry, pharmacology and physiology.  Hansen, however, knew or should have known that MONSTER ENERGY DRINK does not provide twice the "buzz" or energy as any other regular energy drink.

47.     The statement on LO CARB MONSTER: "Lo-Carb Monster Energy still delivers

twice the Buzz of a regular energy drink, but only has a fraction of the calories" is false and or misleading based on the products' ingredients and generally accepted principles of biochemistry, pharmacology and physiology. Hansen, however, knew or should have known that LO CARB MONSTER does not provide the same energy or twice the buzz or energy as MONSTER ENERGY or any other regular energy drink.

48.     The statement "Java Monster …half the caffeine of regular coffee. Twice the 'Buzz'" on the JAVA MONSTER ORIGINALE, JAVA MONSTER MEAN BEAN, JAVA MONSTER LOCA MOCA, and JAVA MONSTER NUT-UP product labels and advertising is false and misleading based on the products' ingredients and generally accepted principles of biochemistry, pharmacology and physiology. Hansen, however, knew or should have known that these MONSTER ENERGY COFFEES do not have half the caffeine as regular coffee or provide twice the buzz or energy of regular coffee.

49.     Hansen advertises statement that LOST PERFECT 10 "works, tastes, and mixes as good as the original, but with only 10 calories" and provides "the energy you need to party all night with just 10 calories" is false and misleading based on the products' ingredients and generally accepted principles of biochemistry, pharmacology and physiology. Hansen, however, knew or should have known that LOST PERFECT 10 does not work as good as the original and does not allow a user to party "all night" long.

50.     Hansen's advertisements for these products are false and misleading in violation of the Lanham Act, 15 U.S.C. § 1125(a); the California Health and Safety Code §§ 110390 (misleading advertisements concerning food), and 110290 (misleading nature of food advertisements); and the Cal. Bus. and Prof. Code §§ 17200 (unfair competition), 17500 (unlawful dissemination of false or misleading statements).

51.

**Hansen Misbrands Its Beverages As Dietary Supplements**

52.     Although labeled as dietary supplements, Hansen promotes its HANSEN ENERGY

BEVERAGES, MONSTER ENERGY COFFEES and HANSEN ENERGY TEAS, not as dietary supplements, but as conventional foods (beverages), causing them to be misbranded under state and federal law. *See* California Health and Safety Code §§ 110100(a), 110655, 110710; 21 U.S.C. § 343.

53.     The National Association of Convenience Stores categorizes HANSEN ENERGY BEVERAGES, MONSTER ENERGY COFFEES and HANSEN ENERGY TEAS as beverages (i.e. foods), not as dietary or nutritional supplements.

54.     Hansen markets its MONSTER ENERGY COFFEES both as conventional coffees and as mixers for (i.e. food additives) alcoholic beverages.

55.     Hansen markets its HANSEN ENERGY BEVERAGES as mixers for (i.e. food additives) alcoholic beverages.

56.     Hansen markets its HANSEN ENERGY TEAS as conventional teas.

57.     Under federal law, a dietary supplement cannot be represented to be a conventional food. By plain implication, Hansen intends for those products it urges consumers to ingest in lieu of other coffees, teas or alcoholic beverage mixers to be considered themselves coffees or teas or coffee or tea substitutes or alcoholic beverage mixers. Because coffee and tea, coffee and tea substitutes, and alcoholic beverage mixers are not dietary supplements, inclusion of the term "energy supplement" on the labels of those products (together with "Supplement Facts" panels) violates state and federal labeling laws and deceives consumers and violates California Business & Professions Code §§ 17200 and 17500.

## FIRST CLAIM FOR RELIEF

## FALSE ADVERTISING – VIOLATION OF 15 U.S.C. § 1125(a)

58.     Living Essentials incorporates all paragraphs above by this reference.

59.     Living Essentials sells dietary supplements in interstate commerce throughout the United States.

60.     Hansen sells its HANSEN ENERGY PRODUCTS in interstate commerce

throughout the United States and when they are labeled and marketed as "energy supplements," they compete with Living Essentials' dietary supplements.

61.    Hansen engages in commercial advertising in interstate commerce across the United States.

62.    Hansen's advertisements contain false and misleading statements of fact concerning its own products.

63.    Hansen's false and misleading commercial advertising in interstate commerce violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that: it contains false and misleading statements of fact in commercial advertising about its own products; those representations are material; they are likely to influence the purchasing decision of a substantial number of reasonable consumers; those misrepresentations actually deceive or, at a minimum, have the tendency to deceive a substantial segment of the reasonable consumer audience; and, Living Essentials has been injured, and in the future is likely to continue to be injured, as a result of the misrepresentations, both by the direct diversion of sales from Living Essentials to Hansen and by a lessening of the goodwill associated with Living Essentials' products.

64.    As a direct and proximate result, Living Essentials has suffered injury and harm and will continue to suffer such harm, including money damages in excess of $75,000, exclusive of interest and costs, the exact amount of which Living Essentials will prove at trial.

65.    Living Essentials is informed and believes that Hansen's false and misleading advertising is willful.

66.    Living Essentials has no adequate remedy at law with respect to Hansen's future false and misleading commercial advertising precisely because Living Essentials is informed and believes that Hansen will continue in its same course of conduct unless and until it has been restrained by an order of this Court.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF CALIFORNIA BUSINESS CODE §§ 17200 and 17500

67.     Living Essentials incorporates all paragraphs above by this reference.

68.     Hansen's conduct, as alleged above, violates the labeling, misbranding and adulterated product provisions of the Sherman Food, Drug and Cosmetic Act, Cal. Health & Saf. Code §§ 110100(a), 110445, 110505, 10555, 109940, 110660, 110655, 110710, and 110745. *See also,* Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 343.

69.     Hansen's conduct, as alleged above, also constitutes false advertising and unfair competition pursuant to the provisions of Business & Professions Code §§ 17200 and 17500.

70.     As a direct and proximate result, Living Essentials has suffered injury and harm and will continue to suffer injury and harm both by the direct diversion of sales from Living Essentials to Hansen and by a lessening of the goodwill associated with Living Essentials' products.

71.     Living Essentials has no adequate remedy at law with respect to Hansen's future false and misleading commercial advertising precisely because Living Essentials is informed and believes that Hansen will continue in its same course of conduct unless and until it has been restrained by an order of this Court.

WHERFORE, Living Essentials prays for relief against Hansen as follows:

1.     For entry of judgment in favor of defendant on all counts in Hansen's Complaint;

2.     For permanent injunctive relief against Hansen pursuant to 15 U.S.C. §§1116, 1125(a); Business Professions Code § 17203; and Cal. Health & Saf. Code § 111900.

3.     For an award of money damages;

4.     For the recovery of Hansen's illegal and unjust profits;

5.     For three times Living Essentials' actual money damages;

6.     For a finding that Hansen's conduct constitutes an exceptional case, such that Living Essentials is entitled to an award of attorneys' fees, costs and expenses;

7.     For punitive and exemplary damages; and

8.     For such other relief as the Court deems just and proper.

Respectfully submitted,

By:    _/s/ - Mark B. Mizrahi_
Mark A. Cantor (*pro hac vice*)
Thomas W. Cunningham (*pro hac vice*)
Mark B. Mizrahi, Esq. (SBN 179384)
mmizrahi@brookskushman.com
BROOKS KUSHMAN P.C.
6100 Center Drive, Suite 630
Los Angeles, California 90045
T: (310) 743-1188; F: (310) 743-1189

Daniel T. Pascucci, Esq. (SBN 166780)
dpascucci@mintz.com
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
(858) 314-1500

Attorneys for Defendant

Dated: October 12, 2009

# CERTIFICATE OF SERVICE

I am employed in the COUNTY of LOS ANGELES, STATE of CALIFORNIA. I am over the age of 18 and not a party to the within action; my business address is 6701 Center Drive, Suite 610, Los Angeles, CA 90045.

On October 12, 2009 I filed the following document: **AMENDED COUNTERCLAIMS** by electronically filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Norman L. Smith, Esq.
Edward J. McIntyre, Esq.
**SOLOMON WARD SEIDENWURM & SMITH**
401 B Street, Suite 1200
San Diego, CA 92101

Attorneys for Plaintiff,
HANSEN BEVERAGE COMPANY

Executed on October 12, 2009 at Los Angeles, California. I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

*/s/ - Mark B. Mizrahi*