1  NORMAN L. SMITH [SBN 106344]
   nsmith@swsslaw.com
2  EDWARD J. MCINTYRE [SBN 80402]
   emcintyre@swsslaw.com
3  WILLIAM N. KAMMER [SBN 53848]
   wkammer@swsslaw.com
4  THOMAS F. LANDERS [SBN 207335]
   tlanders@swsslaw.com
5  SOLOMON WARD SEIDENWURM & SMITH, LLP
   401 B Street, Suite 1200
6  San Diego, California 92101
   Telephone: (619) 231-0303
7  Facsimile: (619) 231-4755

8  Attorneys for HANSEN BEVERAGE COMPANY

9

10                    UNITED STATES DISTRICT COURT

11                   SOUTHERN DISTRICT OF CALIFORNIA

12

13  HANSEN BEVERAGE COMPANY, a          CASE NO. 08-CV-1166 IEG (WVG)
    Delaware corporation,
14                                      HANSEN BEVERAGE COMPANY'S
                   Plaintiff,           OBJECTION TO MAGISTRATE JUDGE
15                                      GALLO'S ORDER DENYING HANSEN'S
    v.                                  REQUEST TO DEPOSE DR. GAIL
16                                      MAHADY (DOC. NO. 208)
    INNOVATION VENTURES, LLC dba
17  LIVING ESSENTIALS, a Michigan       [Fed. R. Civ. P. 72; 28 U.S.C. § 636(b)(1)(A)]
    corporation,
18                                      Hon. Irma E. Gonzalez
                   Defendant.
19

20

21

22

23

24

25

26

27

28

# I
## INTRODUCTION

On March 5, 2010, Magistrate Judge Gallo denied Hansen Beverage Company's ("Hansen") request to depose Gail B. Mahady, Ph.D. ("Dr. Mahady"), a witness Innovation Ventures, LLC d/b/a Living Essentials ("Living Essentials") once designated as an expert but later de-designated. *See* Minute Order dated March 5, 2010 (Doc. No. 208, the "Order"). Prior to ever being designated as an expert, however, Living Essentials offered her extensive declaration in opposition to Hansen's preliminary injunction motion. That declaration directly attacked the declaration of Hansen's technical expert, Thomas P. Davis, Ph.D ("Davis"), which was filed in support of the motion for preliminary injunction. (Doc. No. 7-3). This Court directly considered and relied on Dr. Mahady's declaration in denying Hansen's motion.

On several occasions, Hansen noticed the deposition of Dr. Mahady only to be faced with objections from Living Essentials. Accordingly, Hansen identified its request to depose Dr. Mahady as an "outstanding discovery issue" in its February 11 submission to Magistrate Judge Gallo. (Doc. No. 194). Magistrate Judge Gallo, however, denied Hansen's request, holding that "Hansen may not depose Dr. Mahady, unless Hansen can show exceptional circumstances." (Doc. No. 208). As discussed in detail below, exceptional circumstances exist because the facts and opinions surrounding Dr. Mahady's declaration are uniquely known only to her, and Hansen will be severely prejudiced if it is not allowed to obtain this discovery.

The March 5 Order invited Hansen to make a showing of exceptional circumstances to Magistrate Judge Gallo but did not extend Hansen's deadline for objecting to the Order under Federal Rule of Civil Procedure 72. On March 15, Hansen submitted to Magistrate Judge Gallo its showing of exceptional circumstances. (Doc. No. 212). That submission is pending, but Judge Gallo has yet to rule on it. Because Hansen's deadline for objecting to the Order pursuant to Rule 72 expires today, Hansen files this objection out of an abundance of caution to preserve its right to object to the Order.

///

///

HANSEN BEVERAGE COMPANY'S OBJECTION TO MAGISTRATE JUDGE'S ORDER (DOC. NO. 208)

**II**
**BACKGROUND**

*Living Essentials Relied Almost Exclusively*
*on Dr. Mahady to Defeat a Preliminary Injunction*

In September 2008, this Court heard Hansen's motion for a preliminary injunction enjoining the sale and advertising of Living Essentials' products. In support of its motion, Hansen submitted the declaration of its testifying expert, Dr. Davis. (Doc. No. 7-4). Dr. Davis is Hansen's Technical Director. He holds a Ph.D. in physiology and biochemistry from the University of Missouri, and received post-doctoral training at a major pharmaceutical company. In his detailed, six-page declaration, Dr. Davis expressed his expert opinion regarding Living Essentials' 5-hour Energy products, and his opinion regarding the falsity of Living Essentials' advertising claims for those products.

In response, Living Essentials submitted the declaration of Dr. Mahady, an Associate Professor at the University of Illinois at Chicago, who holds a Bsc. Pharmacy degree from Dalhousie University and a Ph.D. in Pharmacognosy from the University of Illinois at Chicago. (Doc. No. 25-18). Other than the two paragraphs of Dr. Mahady's declaration that set forth her credentials, the entire balance of the sixteen-page declaration attacks and expressly responds to each and every substantive paragraph of Dr. Davis' declaration. (*See id.,* ¶ 3 ("Response to paragraphs 3-6 of the Davis declaration"), ¶ 4 ("Response to paragraph 7 of the Davis declaration"), ¶¶ 5-6 ("Response to paragraph [sic] 8-14 of the Davis declaration"), ¶¶ 7-13 ("Response to paragraphs 15-23 of the Davis declaration"), ¶¶ 14-22 ("Response to paragraphs 15-23"), ¶¶ 23-24 ("Response to paragraphs 22-25")).

Dr. Mahady's direct attack on Dr. Davis' opinions permeates her declaration. The declaration begins by specifically analyzing the results of the Blum clinical trial[1] sponsored by Living Essentials in order to contradict Hansen's statements in its complaint and Dr. Davis' opinions in his declaration. (*See* Doc. No. 25-18, ¶¶ 3, 8-13). Dr. Mahady's declaration goes on

---

[1]   Blum, J. A randomized, 3-arm comparative-controlled, double-blinded, cross over group, clinical trial to test short term efficacy and safety of Living Essentials' 5-hour energy drink in comparison with other energy drinks. Final Report, May 11, 2007.

HANSEN BEVERAGE COMPANY'S OBJECTION TO MAGISTRATE JUDGE'S ORDER (DOC. NO. 208)

1   to attack Dr. Davis' opinions and his comments on calories and the production of energy. (*Id.*

2   ¶¶ 4-6, 14-22). Additionally, Dr. Mahady provides her expert opinion regarding the effect of the

3   ingredients in the 5-hour Energy products, including an extensive analysis of niacin, vitamin B6,

4   vitamin B12, folic acid, taurine, glucuronolactone, malic acid, N-acetyl-L-tyrosine, L-

5   phenylalanine, caffeine, citicoline, and choline. (*See Id.* ¶¶ 14-24).

6        This Court relied heavily on Dr. Mahady's declaration in its ruling on Hansen's motion for

7   a preliminary injunction. (*See* Doc. No. 38, pp. 4-5 & n.2, 3). Noting the contrary definitions of

8   "energy" provided by Drs. Mahady and Davis, this Court declined to resolve the factual dispute

9   over the definition of "energy" presented by the parties' declarations. (*Id.* at 5-6). Based on the

10   factual disputes raised in Dr. Mahady's declaration, this Court found that Hansen could not

11   demonstrate a likelihood of success on the merits and denied its motion. (*Id.*)

12        Shortly thereafter on November 25, 2008 and December 11, 2008, Hansen issued a

13   subpoena for the production of Dr. Mahady's business records, seeking among other things, all

14   documents (including drafts) prepared by Dr. Mahady for Living Essentials; all communications

15   between Dr. Mahady and any attorney for Living Essentials; and all documents Dr. Mahady

16   reviewed, considered, rejected or relied on in preparing her declaration in support of Living

17   Essentials' opposition to Hansen's motion for a preliminary injunction. At that time, Dr. Mahady

18   had not been designated as an expert witness, and Living Essentials did not serve any written

19   objections to the subpoena. Dr. Mahady then produced responsive documents on January 12,

20   2009, and supplemented her production on May 27, 2009.

21        On March 6, 2009, Living Essentials designated Dr. Mahady as a testifying expert witness.

22   At the time, this made sense because her expert declaration was already before the Court, and her

23   documents had been produced in two separate installments without objection from Living

24   Essentials. Hansen therefore proceeded with its discovery and trial preparations including its plan

25   to depose Dr. Mahady at some point in time.

26        Voluminous discovery then ensued in this case. Because of numerous other discovery

27   evolutions, depositions, discovery responses, and related hearings, Hansen had not yet scheduled

28   the deposition of Dr. Mahady before Living Essentials withdrew her designation as a testifying

1   witness on December 16, 2009.  Dr. David Kennedy, an apparent stranger to the case, was

2   substituted in Dr. Mahady's place.  This substitution was the sole change to Living Essentials'

3   expert designations.

4   ***Magistrate Judge Gallo Denied***
    ***Hansen's Request to Depose Dr. Mahady***

5

6          In a February 11, 2010 submission to Magistrate Judge Gallo, Hansen raised Dr. Mahady's

7   deposition as an "outstanding discovery issue." (Doc. No. 194).  On March 5, Magistrate Judge

8   Gallo issued the Order, ruling that "Hansen may not depose Dr. Mahady, unless Hansen can show

9   exceptional circumstances." (Doc. No. 208).  The Order expressly granted to Hansen the

10  opportunity to make such a showing.  (*Id.*)  On March 15, Hansen submitted to Magistrate Judge

11  Gallo its showing of exceptional circumstances.  (Doc. No. 212).[2]  Magistrate Judge Gallo has not

12  yet ruled on Hansen's submission.

13                                     **III**
                             **LEGAL STANDARD**

14

15         "When a pretrial matter not dispositive of a party's claim . . . is referred to a magistrate

16  judge to hear and decide," a party challenging the magistrate judge's order may object to it "within

17  14 days of being served with a copy." Fed. R. Civ. P. 72(a).  "The district judge in the case must

18  consider timely objections and modify or set aside any part of the order that is clearly erroneous or

19  is contrary to law." *Id.*; 28 U.S.C. § 636(b)(1)(A).

20         "A finding is clearly erroneous when, although there is evidence to support it, the

21  reviewing court on the entire evidence is left with the definite and firm conviction that a mistake

22  has been made. . . ." 14 Moore's Federal Practice, § 72.11[1][b] (Matthew Bender 3d ed.) (*citing*

23  *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D. N.J. 2004)).  A determination "is contrary to law if

24  the magistrate judge misinterpreted or misapplied applicable law." *Id.*  "The 'clearly erroneous'

25  standard applies only to the magistrate judge's **findings of fact**." *See* Schwarzer, Tashima &

26

27  [2]   In its showing to Magistrate Judge Gallo, Hansen explains that the filing was made on March 15 due to the
      exceptional amount of time Hansen's counsel had been devoting to assembling responsive materials for
      production pursuant to other provisions of the Order and other discovery rulings.  (Doc. No. 212 at pp. 1-2).

28

1   Wagstaffe, *Cal. Prac. Guide: Fed. Civ. Proc. Before Trial* (The Rutter Group 2009), § 16:278

2   (*citing United States v. McConney*, 728 F.2d 1195, 1200-01 (9th Cir. 1984)) (emphasis added).

3   "The magistrate judge's **legal conclusions** are freely reviewable de novo to determine whether

4   they are 'contrary to law.'" *Id.* (emphasis added).

**IV**

**EXCEPTIONAL CIRCUMSTANCES EXIST
TO JUSTIFY THE DEPOSITION OF DR. MAHADY**

7        Preliminarily, Hansen notes that the cases cited in both parties' preliminary briefs to

8   Magistrate Judge Gallo on this issue (Doc. Nos. 196 and 200) support Hansen's right to depose

9   Dr. Mahady because her declaration was submitted to the Court in 2008 as a major component of

10   Living Essentials' opposition to Hansen's motion for a preliminary injunction.  Living Essentials

11   cited her by name no less than 12 times in its formal opposition.  (Doc. No. 25 pp. 1-7.)  The

12   remedy sought then, and the ultimate relief Hansen still seeks, would include an exercise of this

13   Court's equitable powers to enjoin certain advertisements.  The answers to questions about the

14   statements made under oath to the Court by Dr. Mahady may be some of the factors that this Court

15   would consider in determining appropriate equitable relief.  This is particularly true because the

16   Court relied upon Dr. Mahady's declaration in many respects even though it did not attribute all of

17   the remarks in its opinion to Dr. Mahady.  For that reason alone, Magistrate Judge Gallo should

18   have permitted her deposition to go forward, limited as it would be by the deposition notice and

19   subpoena that confine the subject matter to the declaration and its contents.  His ruling to the

20   contrary is clearly erroneous and contrary to law.

21        Nevertheless, assuming *arguendo* that Dr. Mahady is an expert employed only for trial

22   preparation within the meaning of Rule 26(b)(4)(B), Hansen will assert that it is still entitled to

23   depose Dr. Mahady.  That rule provides that a party may use a deposition to discover facts known

24   or opinions held by an expert specially retained by a party in anticipation of litigation or

25   preparation for trial, but not expected to be called as a witness, only upon a showing of

26   exceptional circumstances under which it is impracticable for the party seeking discovery to obtain

27   facts or opinions on the same subject by other means. Fed. R. Civ. P. 26(b)(4)(B)(ii).

28   / / /

1   The phrase that controls the operation of that subsection is "to obtain facts or opinions on

2   the same subject by other means." Hansen seeks only to examine Dr. Mahady about her own

3   public statement and the facts and opinions contained in it that she presented to the Court.  It was

4   the expert declaration of Dr. Mahady, *not the declaration of any other expert,* that analyzed the

5   Blum study and disputed or discussed: (a) whether Living Essentials' advertising claims were

6   "literally false"; (b) whether Living Essentials' products deliver energy in ways other than giving

7   the user calories; (c) the average energy boost delivered by Living Essentials' 5-hour Energy

8   products; and (d) the appropriate definitions of the terms "crash" and "energy." (Doc. No. 25-18,

9   ¶¶ 4-24; *see also,* Order pp. 4-5).

10   It was also the Declaration of Dr. Mahady, *not the declaration of any other expert*, that

11   prevented Hansen from obtaining a preliminary injunction enjoining the sale and advertising of

12   Living Essentials' 5-Hour Energy products.  Dr. Mahady is the only person who can explain and

13   defend her opinions.  No other expert, no matter how qualified, can explain the thought processes

14   that Dr. Mahady went through in analyzing this case and drafting her written expert report.

15   Consider the following excerpts from her declaration:

16   • "**I am** familiar with the ingredients of and the claims made by Living Essentials for its 5-hour ENERGY® product." (Doc. No. 25-18, ¶ 2) (emphasis added).

17

18   • "**I have** thoroughly reviewed the Blum clinical trial." (*Id.* ¶ 3) (emphasis added).

19   • "**In my opinion**, Living Essentials [sic] advertising claims are supported by the Blum clinical trial and by previously published medical and scientific literature." (*Id.* ¶ 8) (emphasis added).

20

21   • "The results of the Blum clinical study has [sic] been disputed by Hansen.  **I disagree.**" (*Id.* ¶ 13) (emphasis added).

22

23   • "**I disagree** with Dr. Davis that a product that provides no net carbohydrates cannot provide energy." (*Id.* ¶ 14) (emphasis added).

24

25   Simply put, there is absolutely no other source available from which to obtain this information.

26   Thus, exceptional circumstances exist here to justify this deposition.

27   Moreover, severe prejudice to Hansen will result without this deposition testimony.

28   Without it, Hansen is deprived of the opportunity to cross-examine the expert witness who helped

1  persuade this Court to deny Hansen's motion for a preliminary injunction. In that motion, Hansen

2  argued that it would be irreparably injured unless the Court enjoined Living Essentials' advertising

3  claims regarding its 5-Hour Energy products. In opposition, Living Essentials offered

4  Dr. Mahady's declaration to persuade the Court and attack Hansen's expert declaration. Living

5  Essentials offered no other expert or scientific testimony. This Court then considered Mahady's

6  declaration and denied the motion. Even though this Court denied the preliminary injunction, that

7  ruling does not obliterate Hansen's claim that it was and continues to be harmed by Living

8  Essentials' false advertisements. Because the motion was denied, Hansen continues to suffer

9  damages and irreparable harm and will continue to do so until Living Essentials is permanently

10  enjoined.

11       Equity requires that Hansen be afforded the opportunity to depose Living Essentials'

12  expert, Dr. Mahady, regarding her limited testimony directly before this Court. To hold otherwise

13  would allow a party to present to a Court positive evidence in the form of beneficial opinion

14  declarations, to ask the Court to rely upon them in exercising its equitable powers, and then to use

15  the expert-designation process to deny its opponent the opportunity to depose or cross-examine

16  them.

17  

**V**

**DR. MAHADY'S DEPOSITION SHOULD BE PERMITTED**

18

19       Several decisions suggest that discovery of a withdrawn expert is permissible where, as

20  here, the expert provides testimony or produces a report before redesignation. *See, e.g., Estate of*

21  *Manship*, 240 F.R.D. 229, 237 (M.D. La. 2006) (concluding that exceptional circumstances did

22  not exist to justify a deposition where the experts would not testify at trial and **did not** produce

23  expert reports); *Ross v. Burlington N. R.R. Co.*, 136 F.R.D. 638 (N.D. Ill. 1991) (concluding that

24  the protections of Fed. R. Civ. P. 26(b)(4)(B) for non-testifying experts were not waived where

25  nothing more than the identity of the expert and the subject matter of his testimony was revealed).

26  *See also CP Kelco U.S., Inc. v. Pharmacia Corp.*, 213 F.R.D. 176 (D. Del. 2003) (holding that

27  where the attorney-client privilege was waived when defendant produced certain documents to its

28  expert witness, defendant was required to produce those documents to the opposing party,

1  notwithstanding that after the expert's deposition, defendant decided to re-designate the expert as a

2  non-testifying consultant); *Plymovent Corp. v. Air Tech. Solutions, Inc.*, 243 F.R.D. 139, 146 n.14

3  (D. N.J. 2007) (withdrawal of expert and limited reliance on non-testifying expert's report did not

4  waive the protection afforded to non-testifying experts under Rule 26(b)(4)(B); the court noted,

5  however, that if the magistrate granted preliminary injunctive relief, or if the court relied on the

6  expert materials, the result might well be different).

7      Here, Dr. Mahady's deposition should have been ordered to prevent Living Essentials from

8  using Dr. Mahady's testimony and expertise as both a sword and a shield.  In August and

9  September 2008, Living Essentials used Dr. Mahady's report and declaration as a sword to

10  successfully oppose Hansen's preliminary injunction motion.  Then, in December 2009, after

11  benefiting from her testimony without cross-examination from Hansen, Living Essentials decided

12  to shield Dr. Mahady from cross-examination by changing her designation to a non-testifying

13  expert.  These cases suggest that Rule 26 should not be abused in this manner, and Hansen should

14  have been permitted to depose Dr. Mahady regarding her declaration.  Magistrate Judge Gallo's

15  Order to the contrary is, therefore, clearly erroneous and contrary to law.

16
                                    **VI**
                                **CONCLUSION**
17

18  Exceptional circumstances exist to permit the limited deposition of Dr. Mahady, whose expert

19  report was offered prior to her de-designation as an expert witness.  She offered factual analysis

20  and expert opinion regarding the results of the Blum clinical trial sponsored by Living Essentials,

21  and offered her opinion and extensive analysis regarding the effect of the ingredients in the 5-hour

22  Energy products.  Dr. Mahady is the only person in the world who knows how her opinions were

23  formed and the methodology of her review.  Since Dr. Mahady's declaration was affirmatively

24  **and successfully** used against Hansen in this litigation, Hansen should have been allowed to

25  conduct a limited deposition of Dr. Mahady.  Hansen therefore respectfully requests that this

26  Court reverse the Order and permit the deposition of Dr. Mahady.

27  / / /

28  / / /

1   DATED: March 19, 2010

Respectfully submitted,

2   SOLOMON WARD SEIDENWURM & SMITH, LLP

3

By:   /s/ William N. Kammer
4   ——————————————————
NORMAN L. SMITH
5   EDWARD J. MCINTYRE
WILLIAM N. KAMMER
6   THOMAS F. LANDERS
Attorneys for Plaintiff, Hansen Beverage
7   Company

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HANSEN BEVERAGE COMPANY'S OBJECTION TO MAGISTRATE JUDGE'S ORDER (DOC. NO. 208)

1

**CERTIFICATE OF SERVICE**

2  I caused **HANSEN BEVERAGE COMPANY'S OBJECTION TO MAGISTRATE**

3  **JUDGE GALLO'S ORDER DENYING HANSEN'S REQUEST TO DEPOSE DR. GAIL**

4  **MAHADY (REFERENCE DOC. NO. 208)** to be served in the following manner:

5  **Electronic Mail Notice List**

6  The following are those who are currently on the list to receive e-mail notices for this case.

| | |
|---|---|
| Daniel T. Pascucci, Esq.<br>Nathan R. Hamler, Esq.<br>Benjamin L. Wagner, Esq.<br>Mintz Levin Cohn Ferris Glovsky and Popeo<br>3580 Carmel Mountain Road, Suite 300<br>San Diego, CA 92130<br>Telephone: (858) 314-1510<br>Facsimile:   (858) 314-1501<br>dpascucci@mintz.com<br>nhamler@mintz.com<br>bwagner@mintz.com<br>Attorneys for Innovation Ventures LLC dba Living Essentials | Mark A. Cantor, Esq.<br>Mark Lorelli, Esq.<br>Thomas W. Cunningham, Esq.<br>Brooks Kushman P.C.<br>1000 Town Center, 22d Floor<br>Southfield, MI 48075<br>Telephone: (248) 358-4400<br>Facsimile:   (248) 358-3351<br>mcantor@brookskushman.com<br>mlorelli@brookskushman.com<br>tcunningham@brookskushman.com<br>lscott@brookskushman.com<br>Attorneys for Innovation Ventures LLC dba Living Essentials |
| Mark B. Mizrahi, Esq.<br>Brooks Kushman, P.C.<br>Howard Hughes Center<br>6100 Center Drive, Suite 630<br>Los Angeles, CA 90045<br>Telephone: (310) 348-8200<br>Facsimile:   (310) 846-4799<br>mmizrahi@brookskushman.com<br>Attorneys for Innovation Ventures LLC dba Living Essentials | John B. Sganga, Jr., Esq.<br>Lynda Zadra-Symes, Esq.<br>Knobbe Martens Olson & Bear, LLP<br>2040 Main Street, 14th Floor<br>Irvine, CA 92614<br>Telephone: (949) 760-0404<br>Facsimile:   (949) 760-9502<br>jsganga@kmob.com<br>ljs@kmob.com<br>Co-counsel for Hansen Beverage Company |

**Manual Notice List**

The following is the list of attorneys who are not on the list to receive e–mail notices for this case (who therefore require manual noticing).

No one.

/s/William N. Kammer
William N. Kammer